[Civ. No. 1321.   Third Appellate District.—May 21, 1915.]

A. H. THAYER, Respondent. v. L. A. BRADEN, Appellant.

ACTION FOR CONVERSION—SEIZURE OF PROPERTY UNDER ATTACHMENT—
PURPOSE OF BOND TO PREVENT LEVY—INSUFFICIENT FINDING.—In
an action against a sheriff for the alleged conversion of personal
property seized by him under a writ of attachment regularly issued
in an action against the plaintiff and his copartner for a partner-
ship debt, a judgment against such officer is unwarranted, where
it is set up as a defense that the plaintiff failed to give the de-
fendant security to prevent the attachment of such property, and
there is no finding that the security given by the plaintiff's co-
partner to prevent such attachment was given for or on behalf of
plaintiff or to prevent the attachment of plaintiff's property.

ID.—ATTACHMENT—BOND TO PREVENT LEVY—CONSTRUCTION OF CODE.—
Section 540 of the Code of Civil Procedure manifestly means that
the plaintiff cannot have the property of the defendant attached
if the required security is given by a bond to prevent the attach-
ment, but the section requires that such bond be given by the one
whose property is about to be attached, the demand of the section
being that "such defendant" give the security.

APPEAL from a judgment of the Superior Court of
Plumas County.   J. O. Moncur, Judge.

The facts are stated in the opinion of the court.

L. N. Peter, for Appellant.

L. H. Hughes, for Respondent.

BURNETT, J.—The action was for damages for the con-
version of a wood sawing outfit and judgment went for plain-
tiff.   Defendant set up in his answer the following defense:
"Defendant alleges that on the 14th day of May, 1914, he was,
and ever since has been, and now is, the duly appointed, quali-
fied and acting sheriff of the county of Plumas, state of Cali-
fornia.

"That on the 14th day of May, 1914, one H. T. Johnson
commenced an action in the justice's court of Plumas town-
ship, county of Plumas, state of California, against the above-
named plaintiff and one R. J. McKeowen, for the recovery
from said plaintiff and said R. J. McKeowen of the sum of

$106.14; and on said last named date there was duly and regularly issued by the aforesaid justice's court and delivered to defendant for service, a writ of attachment against plaintiff and said R. J. McKeowen, whereby this defendant was commanded to attach and safely keep all the property of the plaintiff and said R. J. McKeowen within Plumas County, not exempt from execution, or so much thereof as may be sufficient to satisfy the said demand, to wit, $106.14, besides the costs, unless the said plaintiff and said R. J. McKeowen gave security by the undertaking of two sufficient sureties in an amount sufficient to satisfy said demand, besides costs.

"That thereafter, on the 23rd day of May, 1914, this defendant under and by virtue of said writ of attachment, and because plaintiff failed to give this defendant security as aforesaid, he attached the personal property in said complaint described, by taking the same into custody as provided by law, and that ever since said last named date this defendant, as sheriff of said county of Plumas, has held the said property under and by virtue of said writ of attachment, and not otherwise. That the said property is not exempt from execution and is no more than sufficient to satisfy the said demand of $106.14, besides the costs in said action.

"That the aforesaid action in said justice's court is still pending and undetermined and the said writ of attachment has not been satisfied or discharged and is still in full force and effect, and in taking and seizing the said property and holding possession thereof, this defendant has been and now is justified by law."

The court found in accordance with said allegation as to the institution of said action in the justice court and the issuance of a writ of attachment and, furthermore: "That at the time of the issuance of the said writ of attachment as aforesaid the plaintiff herein and said R. J. McKeowen were engaged in the operation of a creamery business in Quincy in said Plumas County, as copartners, and that the indebtedness sued upon in said justice's court action by said Johnson against the plaintiff herein and said R. J. McKeowen was incurred in the course of said copartnership business.

"That subsequent to the issuance of said writ of attachment out of said justice's court and to prevent the levy of the same and at the instance of said R. J. McKeowen, a bond

was given in which H. McIntosh and L. R. Peterson were sureties.

"That after the execution of said bond and the delivery of the same to defendant and the approval of the same by him, the said defendant without lawful authority proceeded to levy and did unlawfully take into his possession and custody the said wood-saw and gas-engine as hereinbefore stated in paragraph II of these findings."

The said undertaking was conditioned: "That if the plaintiff shall recover judgment in said action, defendants will on demand pay to plaintiff the amount of whatever judgment may be recovered in said action, together with the percentage, interest and costs and as required by the terms of the judgment; and if defendants shall not pay we will." This bond, it may be stated, was executed by the sureties only, neither Thayer nor McKeowen having signed it.

That appellant's withholding of the property was unlawful and amounted to a conversion is claimed by virtue of said undertaking read in the light of section 540 of the Code of Civil Procedure, providing that "The writ must be directed to the sheriff of any county in which property of such defendant may be, and must require him to attach and safely keep all the property of such defendant within his county, not exempt from execution or so much thereof as may be sufficient to satisfy the plaintiff's demand, the amount of which must be stated in conformity with the complaint, unless the defendant give him security by the undertaking of at least two sufficient sureties, in an amount sufficient to satisfy such demand, besides costs, or in an amount equal to the value of the property which has been or is about to be, attached; in which case, to take such undertaking."

The section manifestly means that the plaintiff cannot have the property attached if the required security is given by a bond to prevent the attachment. (*Ayres* v. *Burr*, 132 Cal. 125, [64 Pac. 120].) But the section requires that the bond must be given by the one whose property is about to be attached. Its demand is that "such defendant" give the security. It might be that it would be sufficient to warrant the sheriff in declining to levy the attachment if said undertaking were given for or on behalf of such defendant. But there is no finding either that the bond was given by defendant Thayer or for his benefit or, indeed, to prevent the attach-

ment of his property. The whole matter is of statutory regulation and there should have been a complete finding as to the defense set up in the answer. It being found that the attachment was regularly issued and placed in the hands of the sheriff, this would certainly justify his action in levying upon the property and would demand a judgment in his favor in the absence of a finding that said defendant gave him security as provided by the statute. But as to this latter circumstance, the findings are entirely silent.

It is true that the court found that appellant converted the property "to his own use," but it is apparent that this is a deduction from the court's conclusion that the said writ of attachment was dissolved by the execution of said undertaking and "conferred no authority on the defendant to take the property of plaintiff into his posesssion." In other words, it appears to be an inference based upon and drawn from a conclusion of law and we think it does not render immaterial a finding as to whether said undertaking was given by or on behalf of respondent.

Nor does it seem to matter that the court found that a partnership existed between Thayer and McKeowen and that the debt was a partnership debt. From this it would not necessarily follow that a bond given by one of the partners would operate to protect the property of the other from attachment. That would depend, of course, upon the terms of the bond and the purpose for which it was given.

Neither is it a case where the finding must necessarily have been adverse to appellant. Indeed, the evidence seems practically without conflict that respondent had nothing to do with the execution of said bond and that it was not given to relieve his property from the levy of the attachment. As to this, the testimony of plaintiff was as follows: "Q. Before Mr. Braden took the property away, didn't he present you with a writ of attachment in the case of Johnson v. W. J. McKeowen and Thayer for $108? A. Yes, sir. Q. Didn't he inform you that he was taking the property under that writ of attachment? A. He did. Q. Do you know of his having appropriated it, put it to any use of his own? A. I don't know of his using it, no, sir. I haven't seen it since he took it. Q. Didn't he also inform you at the time that if you would give a bond for your half of that $106.14 he would release it? A. No, sir; he informed me if I would give a bond he would re-

lease it; he didn't say my half or any other amount. Q. He would release it if you would give a bond? A. Yes, sir. Q. You refused to give the bond, did you not? A. I did.''

Appellant testified as follows: "Q. With reference to this property involved in this action which you attached, please state what you did with it after you attached it? A. I stored it on Lee's farm. Q. Did you appropriate it to your own use in any way whatever? A. No, sir. Q. Are you still holding it as security under that writ of attachment? A. Yes, sir. Q. Who obtained the bond for the release? A. Mr. McKeowen. Q. Did Mr. Thayer have anything to do with it? A. No, sir. Q. Had he previously refused to give any bond? A. Yes, sir.'' He testified further that Mr. McKeowen said he was putting up a bond for his part. L. N. Peter also testified that his understanding was that the bond was given by McKeowen ''to prevent any attachment on any property he owned himself.''

The foregoing is the substance of all the evidence on that point and would seem to leave no doubt that the bond was given by McKeowen to prevent the attachment of his own property. In fact, it was not the bond of Thayer because the obligors were not sureties for him. ''A surety is one who at the request of another, and for the purpose of securing to him a benefit, becomes responsible for the performance by the latter of some act in favor of a third person, or hypothecates property as security therefor.'' (Civ. Code, sec. 2831.) Thayer made no such request of the alleged sureties and had no agreement with them and, therefore, it is plain that he would not be bound by their contract. He was not their principal, and they would have no redress against him. The bond, therefore, imposed upon him no burden and it could, of course, confer no benefit upon him. Thayer being free from any liability arising on said bond, it would naturally follow that there was no consideration thereon for the withholding from attachment of his property. Under the circumstances, if the sheriff had refused to attach he would have been liable for damages.

Another circumstance is worth considering. On the 22d day of May the sheriff was served with the following notice and direction:

"In the Justice's Court of Plumas Township,

"Plumas County, California.

"H. J. Johnson, Plaintiff,

vs.

"R. J. McKeowen, Defendant.

"Order to release undertaking to prevent attachment.

"The defendant R. J. McKeowen having made a satisfactory deposit to secure the payment of one-half of plaintiff's demand in this case and the sureties on the undertaking to prevent attachment filed in this case by said defendant R. J. McKeowen having requested that they be released from further liability upon said undertaking, you are hereby authorized to surrender the said undertaking and to release the sureties thereon from further liability.

(Signed) L. N. Peter,

Attorney for Plaintiff."

The sheriff followed said direction and surrendered the undertaking to the sureties. There can be no doubt that the parties to said undertaking had the legal right to cancel or rescind it. The sureties, the plaintiff in the justice court action, and McKeowen were the only parties to said undertaking and they united in its nullification. Of course, Thayer could not object to the cancellation of an instrument to which he was not a party and which was not executed on his behalf or for his benefit. Thereafter the undertaking was not operative in any one's favor. Surely, then, the sheriff was entirely free to levy said writ of attachment on the property of respondent. This he did the following day. He had taken the said property into his possession before but had returned it to the owner, under the mistaken belief that said undertaking was sufficient to protect him. Of that temporary possession, it may be said, the owner does not complain and therefore it can be eliminated from consideration.

In brief, then, as we understand the case, there being no question as to the regularity of the attachment proceedings, the finding of the court as to said undertaking should have embraced the question as to whether it was given by or on behalf of respondent. But beyond that, it appears clear enough that said undertaking was not given by or for respondent and it therefore was not sufficient to warrant the sheriff in withholding the attachment; and, moreover, the un-

dertaking, such as it was, became by the act of the parties to it entirely inoperative before the levy of the writ by virtue of which the sheriff now holds possession of the property.

We are constrained to hold that the judgment should be reversed and it is so, ordered.

Chipman, P. J., and Hart,| J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on June 21, 1915.